IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

Vs. No. 07-40107-01-SAC

DAVID MOELLER,

Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the parties' unresolved objections to the presentence report ("PSR") as set forth in the PSR addendum and argued in their sentencing memoranda. (Dks. 42, 43, 53 and 55). The defendant, David Moeller, and his business, Midwest Surplus Group, Inc., were charged in a three-count indictment with violations of the Resource Conservation and Recovery Act ("RCRA") involving his improper and unlawful handling, storage and transportation of paint and stains at his business facility in Lawrence, Kansas, and his warehouse storage facility in Topeka, Kansas. The PSR recommends a base offense level of eight pursuant to U.S.S.G. § 2Q1.2(a); a four-level enhancement for the offense

involving a discharge, release or emission of a hazardous substance (U.S.S.G. § 2Q1.2(b)(1)(B)); a four-level enhancement for the offense requiring a substantial expenditure for cleanup (U.S.S.G. § 2Q1.2(b)(3)); a four-level enhancement for the offense involving the storage and transportation of hazardous waste without a permit (U.S.S.G. § 2Q1.2(b)(4)); and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. With a total offense level of 17 and a criminal history category of one, the guideline range is 24 to 30 months. There are three unresolved objections: one by the government and two by the defendant.

**Government's Objection**: The government argues the defendant should receive a two-level adjustment for being an organizer, leader, manager or supervisor pursuant to U.S.S.G. § 3B1.1(c). The government asserts the defendant employed people at his facility who knew paint was being stored at the two locations and who had been directed to move paint from the Lawrence facility to the Topeka warehouse. The government cites the defendant's statement to Agent Asher that he had directed employees to handle paint waste and transport it after the Kansas Department of Health and Environment ("KDHE") had identified it as hazardous.

Ruling: Section 3B1.1(c) instructs courts to increase by two levels the defendant's base offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). The commentary to § 3B1.1 provides that "[a] 'participant' is a person who is criminally responsible for the commission of the offense [.]" U.S.S.G. § 3B1.1, comment. (n. 1). Thus, "any enhancement under § 3B1.1, including an enhancement for organizing, leading, managing, or supervising an otherwise extensive criminal activity, requires the involvement of at least one participant other than the defendant." *United States v. Gallant*, 537 F.3d 1202, 1241 (10th Cir. 2008) (quotation marks and citations omitted), *petition for cert. filed*, --- U.S.L.W. — (Mar. 16, 2009) (No. 08-9301). "[E]mployees who are unaware of the operation's fraudulent nature are not criminally responsible participants; as a result, managing or supervising their activities does not qualify a defendant for the enhancement." *United States v. Aptt*, 354 F.3d 1269, 1285 (10th Cir. 2004). The facts argued by the government are not sufficient to prove that a named employee knew the unlawful nature of the Moeller's operations. The government's objection is overruled, as the evidence fails to show that Moeller supervised or led a criminally responsible participant.

**Defendant's Objection No. 1:** The defendant objects to the four-level enhancement for the release or emission of a hazardous substance pursuant to U.S.S.G. § 2Q1.2(b)(1)(B). The PSR bases this enhancement on evidence that waste paint stored by the defendant leaked onto the ground on more than one occasion. The PSR refers to photographs taken at the defendant's Lawrence facility in June and December of 2006. The defendant first objects that the PSR does not refer to any evidence of testing done to prove that the spilled paint meets the definition of a "hazardous or toxic substance." The defendant also objects that the PSR applies this enhancement without proof that the spilled paint caused "actual environmental contamination." The defendant notes the photographs show only a small amount of paint to have leaked onto the ground. The government responds that the photographs show the soil was contaminated and that the simple release of a hazardous substance into the environment is enough for the enhancement.

Ruling: Application note five explains:

> Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the

> duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.

U.S.S.G. § 2Q1.2(b)(1), comment. (n. 5). This enhancement is concerned with "harm to life from dangerous chemicals" and "'environment' encompasses at least those portions of the earth's crust whose contamination can impact human health." *United States v. Overholt*, 307 F.3d 1231, 1257 (10th Cir. 2002). "[T]he simple release of a toxic or harmful substance into the environment constitutes contamination." *Id*.

The government has furnished the court with the affidavit of Thomas Hayes, an environmental scientist with KDHE. Hayes avers that he investigated the defendant's business in June of 2006, that the photograph taken in June shows the spill of an oil-based red paint, and that "oil-based paints are hazardous for ignitability and some are potentially characteristic for heavy metals." (Govt.'s Ex. 13). The court believes it a stretch to regard the isolated exposure of ignitable oil-based paint fumes to the atmosphere as an emission or discharge of a hazardous substance under the guidelines. Such conduct would be indistinguishable from a consumer's expected use of this paint. On the other hand, there seems no serious question that oil-based paint meets the definition of a hazardous

substance. Consequently, the spilling of oil-based paint onto ground is the simple release of a harmful substance resulting in contamination and falling within the scope of the enhancement language. Moreover, the Tenth Circuit acknowledged in *Overholt* that the majority of circuit courts viewed proof of actual environmental contamination as not required for this enhancement. 307 F.3d at 1257.

The court agrees with the defendant there are a number of circumstances favoring a downward departure from the four-level enhancement. The quantity of the paint spilled is small. The hazardous nature of this substance is not an environmental risk as serious as other hazardous pollutants. The general consumer use of such paint and stains certainly reflects the less serious environmental risk associated with this substance. The court believes a downward departure of two levels is appropriate on these facts. The court sustains in part the defendant's objection to this enhancement.

**Defendant's Objection No. 2**: The defendant objects to the four-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(3) for a cleanup that required substantial expenditure. The PSR finds that the defendant and KDHE together paid more than $128,000 for cleanup costs and that

Midwest still owes nearly $90,000 in unpaid invoices for cleanup costs. The defendant maintains this enhancement is inapplicable, as cleanup was not a required condition and was not ordered by a state or federal agency. The defendant notes his regulatory violations principally involved his storage of surplus paint, and he had options for dealing with the agency directives. He exercised one option of transporting some paint to sites designated by charities. Another option was for him to obtain a permit and begin storing the surplus paint in accordance with regulatory standards for extended storage. He exercised this option insofar as he improved some of his storage, but he never obtained a permit and did not establish storage facilities in full compliance with the applicable regulations. Another option was reducing the quantity of surplus paint either by sales or with the help of a professional company that would remove and destroy the paint. He exercised this option by selling a portion of the paint, but he largely relied on two companies that he had retained at some expense to remove and destroy the excess paint. The defendant complains that he should not be punished with a longer sentence for exercising one of the reasonable options available to him for correcting the surplus paint problem.

Ruling: "[I]f cleanup required a substantial expenditure, increase by

4 levels." U.S.S.G. § 2Q1.2(b)(3). Application note seven explains:

> Subsection (b)(3) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required. Depending upon the nature of the contamination involved a departure of up to two levels either upward or downward could be warranted.

U.S.S.G. § 2Q1.2(b)(3), comment. (n.7). The defendant does not dispute that the removal and destruction of the surplus paint were a substantial expense. The defendant does take issue with whether this discretionary expense was a cleanup cost.

"Section 2Q1.1(b)(3) makes a defendant's sentence dependant on the nature of contamination caused by the environmental offense. The costs of cleanup are but one method a court can use to measure the seriousness of contamination." *United States v. Eidson*, 108 F.3d 1336, 1344 (11th Cir.), *cert. denied*, 522 U.S. 899 (1997), *overruled in part on other grounds*, *United States v. Rapanos*, 547 U.S. 715 (2006). Cleanup costs plainly include the "the cost of cleaning up [the defendant's] contamination of the environment." *See, e.g., United States v. Chau*, 293 F.3d 96, 100 (3rd Cir. 2002). It also includes costs for preliminary examination, site testing, studies and related costs of site remediation. *United States v. Eidson*, 108 F.3d at 1345. The (b)(3) enhancement seems

plainly intended to address "the nature of contamination" as measured by its impact on the public or by the expense of cleaning it up. The defendant argues there was no contamination here that required a cleanup, and no expense was incurred to decontaminate or clean up any site involved with the defendant's business.

Insisting that the removal and destruction of the defendant's surplus paint are a cleanup cost, the government cites *United States v. Cunningham*, 194 F.3d 1186, 1202 (11th Cir. 1999), *cert. denied*, 531 U.S. 831 (2000), for its holding that the (b)(3) enhancement is not limited "to the costs of contamination cleanup per se: instead, it extends to any cleanup related to the offense." The substantial expenditure in *Cunningham* was measured by what "[t]he owner of the land in Georgia on which Cunningham abandoned the hazardous waste had to pay $147,716.66 to dispose of the waste properly, *i.e.*, to clean it up." *Id*. There is little question that courts have treated as cleanup costs the expense of removing waste left by a defendant in order to restore the habitability of a facility. *See United States v. Russo*, 281 Fed. Appx. 43, 46-47 (2nd Cir. 2008). Despite the language in *Cunningham*, the guideline commentary directly states that the (b)(3) enhancement is dependent upon the "nature

of the contamination." If there is no contamination, then there is nothing to measure by the expenditure of funds. Still, there is a logic behind *Cunningham* and *Russo*, that is, abandoning or leaving behind waste is contamination that requires a cleanup.

This case, however, is not an instance where the defendant abandoned or left behind a hazardous waste substance requiring cleanup. Instead, the defendant was operating a business and storing the hazardous substance as part of its business but in an improper manner and without a required permit. Neither the language of nor the apparent purpose of the (b)(3) enhancement embraces the notion that contamination occurs simply when a defendant unlawfully possesses or improperly stores a hazardous substance. The substantial expenditure here was the result of the defendant choosing to deal with his violations by removing the surplus paint from his inventory and having it destroyed as required by law. In doing so, this corrected the defendant's business practices, but this did not constitute cleaning up contamination. As for the cost of cleaning up any spilled paint, there is no evidence of any substantial expense associated with this. The defendant's objection to this enhancement is sustained.

The result of these rulings is that the defendant's adjusted

offense level is reduced to fourteen and his total offense level to twelve. The defendant's guideline sentencing range is ten to sixteen months.

IT IS THEREFORE ORDERED that the government's objection to the PSR is overruled, and the defendant's objections to the PSR are granted in part and denied in part.

Dated this 31st day of March, 2009, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge